Cite as 2024 Ark. App. 179

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-22-269

| | | |
|---|---|---|
| MARTHA HUGHES | | Opinion Delivered March 13, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-19-43] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE EDDY R. EASLEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Martha Hughes appeals her convictions from the Hot Spring County Circuit Court. This case is before us for the second time. It was first filed as a no-merit appeal along with a motion to withdraw; we denied the motion and required rebriefing in merit format. *See Hughes v. State*, 2023 Ark. App. 316.

A jury convicted Hughes of one count of possession of methamphetamine with purpose to deliver and two counts of possession of drug paraphernalia. She was acquitted of the simultaneous-possession-of-drugs-and-firearms charge. Hughes was sentenced to consecutive sentences totaling forty-six years' imprisonment. As her sole claim for reversal here, Hughes claims the circuit court violated her right to due process by denying her motion to remove juror Candace Stricklin and replace her with an alternate juror. We affirm.

At trial, after the first witness's testimony, the circuit court recessed for lunch. During the recess, Stricklin was sitting with other jurors in the jury room when she received a Facebook notification that Caleb Hughes had sent her a friend request and the following message: "I'll love you long time if you could help my mom out on being wrongfully tried."

Upon seeing it, juror Stricklin stated out loud, "I think her son tried to message me," and she stepped outside of the jury room to notify the bailiff. After being told of Hughes's son's message to Stricklin, the court conducted an in camera hearing in which it and counsel for both parties questioned her. Stricklin testified that Caleb Hughes played on her fiancé's softball team; however, she did not know him well, had never socialized with him outside of the softball games, and did not know that he was Hughes's son until she received the Facebook friend request and message.

Stricklin testified that neither the receipt of the friend message nor the discovery that Caleb Hughes was Hughes's son affected her ability to be impartial. She was uncertain as to whether any of the other jurors heard her state that she had received the message but confirmed that she would comply with the court's instruction to not discuss the matter further and to notify the court if anyone attempted to discuss the matter with her.

After questioning Stricklin, the court and counsel for both parties questioned each of the other jurors individually, including the two alternate jurors, in chambers to determine whether they knew about the message and, if so, the extent of their knowledge and the effect it had on their ability to render a fair and impartial verdict. Each of the jurors who was aware of the message testified that it did not affect their ability to be a fair and impartial juror, and

all the jurors confirmed that they would comply with the court's instruction not to discuss the matter further. The circuit court found that Hughes's allegations of bias were purely speculative, and it denied her motion to remove juror Stricklin for cause.

At trial, the State presented the testimony of two law enforcement officers and a forensic chemist. In 2018, Agent Roy Bethel with the Clark County Sheriff's Department began an investigation after receiving a "steady" stream of complaints that narcotics were being sold from the camper trailer where Hughes lived. During the months-long investigation, Officer Dillon Ledbetter with the Hot Spring County Sheriff's Department conducted surveillance on Hughes's residence and recovered methamphetamine from four vehicles leaving Hughes's trailer.

When the officers executed the search warrant for Hughes's trailer on January 18, 2019, two other adults and a child were present inside the trailer. After Agent Bethel informed Hughes that the officers were there to search for narcotics and paraphernalia, she responded, "Well, I don't need you tearing up my whole place, I'll tell you where it's at." Upon searching the inside of the trailer, the officers seized five clear plastic bags and a plastic container suspected of containing methamphetamine, a clear plastic bag suspected of containing marijuana, five used methamphetamine glass pipes, three syringes, two sets of scales with white residue suspected to be methamphetamine, and a loaded shotgun.

A notebook with Hughes's name on the front of it, which appeared to be used as a business ledger to record drug sales, also was seized. Forensic chemist Quinton Bryant with the Arkansas State Crime Laboratory testified that the white crystalline substance contained

in the baggies that were tested was methamphetamine, and it weighed more than two grams. The jury found Hughes guilty of one count of possession of methamphetamine with the purpose to deliver and two counts of possession of drug paraphernalia, but it acquitted her on the count of simultaneous possession of drugs and firearms.

On appeal, Hughes argues that the circuit court violated her right to due process by denying her motion to remove juror Stricklin and replace her with an alternate juror. The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment guarantee a criminal defendant "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also, e.g.*, *Finch v. State*, 2018 Ark. 111, at 6–7, 542 S.W.3d 143, 147.

If a juror's impartiality and, therefore, the integrity of jury proceedings is jeopardized by an unauthorized invasion, the remedy "is a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 216. Due process is satisfied when the circuit court "determine[s] the circumstances, the impact thereof upon the juror, and whether or not prejudicial, in a hearing with all interested parties permitted to participate." *Id.* (quoting *Remmer v. U.S.*, 347 U.S. 227, 230).

This is precisely the remedy accorded by the circuit court in this case. Taking into consideration the circumstances surrounding Hughes's son's improper midtrial contact with juror Stricklin and its impact on her and the other jurors, the circuit court found that

Hughes's allegations of prejudice were purely speculative, and it denied her motion to remove juror Stricklin for cause.

Further, the circuit court did not abuse its discretion by denying the motion to remove Stricklin from the jury. A juror is presumed to be unbiased and qualified to serve. *E.g.*, *Smith v. State*, 343 Ark. 552, 567, 39 S.W.3d 739, 748 (2001). The burden is on the appellant to prove that a juror was prevented by any circumstance from acting impartially, and as a result, there is a reasonable probability of prejudice. *E.g.*, *id*. Whether a juror is impartial is addressed to the sound discretion of the circuit court. *E.g.*, *id*.

"In matters involving impartiality of jurors, we have consistently deferred to the trial court's opportunity to observe jurors and gauge their answers in determining whether their impartiality was affected." *Echols v. State*, 326 Ark. 917, 991, 936 S.W.2d 509, 548 (1996); *see also, e.g.*, *Strickland v. State*, 74 Ark. App. 206, 210, 46 S.W.3d 554, 557 (2001) ("The trial court has much latitude and discretion in passing on the qualifications of jurors, and unless abused, its action will not be reversed on appeal."). The abuse of discretion standard "is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court acted improvidently, thoughtlessly, or without due consideration." *Grant v. State*, 357 Ark. 91, 93, 161 S.W.3d 785, 786 (2004).

Under these standards, we must affirm. The circuit court did not act thoughtlessly, improvidently, or without due consideration in denying Hughes's motion to remove the juror. The court conducted a thorough and careful voir dire of each juror. As required, it

5

considered the circumstance of the external contact, and asked the jurors to assess the extent and the effect it had on their ability to act impartially. *See Smith*, 455 U.S. at 216.

Having heard the testimony, the court found that Stricklin could remain impartial. The circuit court was in the best position to determine whether Stricklin's impartiality was affected, and our court defers to the circuit court's determination that she could remain fair and impartial. *See, e.g., Echols*, 326 Ark. at 991, 936 S.W.2d at 548.

Hughes's contention that Stricklin was unable to remain impartial is speculative, and her arguments do not cite any legal authority to support her position. The circuit court found that Stricklin came into the case with a clear mind and had no knowledge or bias against any party or witness who testified in the matter. Stricklin, appropriately and promptly, reported the message. Stricklin assured the court that she could fulfill her obligation to decide the case fairly and impartially solely on the evidence presented at trial. *See Childs v. State*, 2010 Ark. App. 675, at 4–5 (holding that due to juror's ultimate assurance to the court that she could be objective, the circuit court did not err by refusing appellant's midtrial motion to remove a juror due to her belated realization that she knew the mother of one of the victims).

Given our standard of review and the record presented before us, we affirm the circuit court's denial of Hughes's motion to remove Stricklin from the jury after finding that the message she received from Hughes's son did not affect her ability to perform her duties as a fair and impartial juror. As such, Hughes's convictions are affirmed.

Affirmed.

VIRDEN and THYER, JJ., agree.

*Jeremy D. Wann*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.